UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY JACHIN WINKELMAN,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:16-cv-01126-AC<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]

For the reasons that follow, the court will grant plaintiff's motion for summary judgment in part, and deny the Commissioner's cross-motion for summary judgment.

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986). SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

I. PROCEDURAL BACKGROUND

Plaintiff applied for disability insurance benefits on December 1, 2010 and for supplemental security income on December 17, 2010. Administrative Record ("AR") 136.[2] The disability onset date for both applications was alleged to be February 1, 2007. Id. The applications were disapproved initially and on reconsideration. Id. On August 6, 2012, ALJ Mark C. Ramsey presided over a hearing on plaintiff's challenge to the disapprovals. AR 74-101 (transcript). Plaintiff was present and testified at the hearing. AR 136. Plaintiff was represented by non-attorney representative Glenn A. Skinner at the hearing. Id. There was no Vocational Expert at the hearing.

On October 11, 2012, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 136-146 (decision), 147-151 (exhibit list). Plaintiff appealed, and on November 14, 2013 the Appeals Counsel granted the request for review and remanded the case to the ALJ on the grounds that newly submitted evidence indicated plaintiff's knee impairment may be more limiting than was found by the hearing decision. AR 153. The Appeals Counsel remanded to the ALJ with instructions to:

- Obtain additional evidence concerning the claimant's knee impairment in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913). The additional evidence may include, if warranted and available, a consultative examinations and medical source statements about what the claimant can still do despite the impairment[s].

- As warranted, give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 96-8p).

---

[2] The AR is electronically filed at ECF Nos. 12-3 to 12-16 (AR 1 to AR 1172).

2

- If warranted by the expanded record, obtain evidence from a vocational expert to determine whether the claimant has acquired any skills that are transferable to other occupations under the guidelines in Social Security Ruling 82-41. The hypothetical questions should reflect the specific capacity/limitations established by the records as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of such appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

AR 153-154. On June 18, 2014, ALJ Ramsey held a hearing on remand. AR 41-71 (transcript). Plaintiff was again represented by Mr. Glenn A. Skinner and appeared via video conference. AR 15. Also present was Mr. Christopher C. Salvo, and impartial vocational expert. Id.

On August 6, 2014, the ALJ issued an unfavorable decision finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 15-34 (decision), 35-40 (exhibit list). Plaintiff appealed and received a decision on March 22, 2016 stating that, after receiving counsel's Representative Brief and Medical Records from Shasta Regional Medical Center dated December 31, 2013 as additional exhibits, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-6 (decision), ECF No. 20 at 8.

Plaintiff filed this action on May 23, 2016. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 6, 8. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 20 (plaintiff's summary judgment motion), 23 (Commissioner's summary judgment motion).

## II. FACTUAL BACKGROUND

Plaintiff was born on May 13, 1959, and accordingly was 47 years old on the alleged disability onset date, making him a "younger person" under the regulations. AR 32; see 20 C.F.R §§ 404.1563(c), 416.963(c) (same). The claimant subsequently changed age category to closely

approaching advanced age. AR 32; 20 C.F.R §§ 404.1563(d), 416.963(d) (same). Plaintiff has a high school education, and can communicate in English. AR 32.

### III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue , 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Comm'r., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not

disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since February 1, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)
>
> 3. [Step 2] The claimant has the following severe impairments: mild multilevel lumbar degenerative disc disease (DDD), moderate facet arthritis at L6-S1, status post right knee arthroscopic surgery, left carpal tunnel syndrome, status post left hand surgery, chronic left hand and right knee pain, bipolar II disorder, attention deficit hyperactivity disorder (ADHD), and antisocial personality disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except frequently reach overhead with the right upper extremity and constantly perform other manipulative activities, frequently perform manipulative activities with the left upper extremity, have occasional exposure to humidity, wetness, temperature extremes and vibration, avoid all

exposure to pulmonary irritants, and mentally limited to simple unskilled work with occasional interaction with the public and co-workers.

6. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. [Step 5] The claimant was born on May 13, 1959 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404. 1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 17-34.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 34.

## VI. ANALYSIS

Plaintiffalleges that the ALJ erred by (1) improperly failing to account for plaintiff's mental limitations in his RFC findings and VE hypothetical; (2) improperly accounting for plaintiff's postural limitations; (3) improperly weighing psychiatric medical source opinion testimony, (4) improperly weighing physical medical source opinion testimony; and (5)

////
////

7

improperly discounting plaintiff's subjective testimony. See ECF No. 20 at 3.[3]

A. The ALJ Properly Addressed Plaintiff's Mental Limitations

The ALJ properly accounted for plaintiff's moderate restrictions with respect to concentration, persistence, or pace in his RFC findings by restricting plaintiff to simple, unskilled work. AR 20. "[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). An ALJ may "translate" limitations in persistence, pace, and/or concentration "into the only concrete restrictions available to him," such as a restriction to "simple tasks." Id., see also Martin v. Astrue, No. 2:12-cv-0033-KJN, 2013 WL 552932, at *8 (E.D. Cal. Feb. 13, 2013) ("An ALJ may synthesize and translate assessed limitations into an RFC assessment without necessarily repeating each functional limitation verbatim in the RFC assessment . . .Moderate mental limitations are not necessarily inconsistent with an RFC for simple repetitive tasks, as long as such an assessment is generally consistent with the concrete restrictions identified in the medical evidence") (internal citations omitted). As in Stubbs-Danielson, the ALJ's limitation of plaintiff to "simple unskilled work" adequately captures the moderate-to-insignificant limitations identified by Dr. Sid Cormier, Dr. Aroon Suansilppongse and Dr. R. Kaspar. ECF No. 20 at 9-10.

Plaintiff's argument that the ALJ's hypothetical to the Vocational Expert was incomplete because it did not specifically include a limitation on pace is inconsistent with the rule in the Ninth Circuit. The Ninth Circuit held in Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007) that moderate mental limitations do not require vocational expert testimony. In Hoopai, a medical source determined that the claimant was moderately limited in "his ability to maintain attention and concentration for extended periods; his ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance; and his ability

---

[3] Plaintiff's points of argument are not organized in the fashion in which they are addressed in this order. The court has analyzed each of plaintiff's arguments, but arguments are re-ordered herein to enhance clarity.

8

to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Id. The ALJ relied on the Grids at step five to determine that the claimant was not disabled, and plaintiff argued on appeal that the ALJ was required to seek vocational expert testimony regarding the pace limitations. Id. at 1075. The Ninth Circuit rejected that argument, holding that the moderate mental limitations were not sufficiently severe to prohibit the ALJ from relying on the Grids without the assistance of a vocational expert. Id. at 1077. Based on this precedent, the ALJ's failure in this case to specifically include a pace limitation in the hypotheticals to the VE is, at worst, harmless error.

### B. The ALJ Improperly Evaluated Plaintiff's Postural Activities Limitations

Plaintiff argues that the ALJ improperly failed to include postural limitations that were included in his initial order in his second order on remand. ECF No. 20 at 22. The fact that, in contrast to the ALJ's original order, the ALJ did not find functional limitations related to plaintiff's ability to stoop, kneel, crouch, and crawl on remand does not, in and of itself, constitute error. Compare AR 144 and AR 20-32. As set forth in 20 CFR § 416.1477, on remand the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." In this case, the Appeals Council ordered the ALJ to, among other things, obtain additional evidence about plaintiff's knee impairment and, "[a]s warranted, give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 96-8p )." AR 153-54. The ALJ's second order is consistent with the Appeals Council's instructions. AR 15-34.[4]

---

[4] In his motion, plaintiff also makes a brief argument that the ALJ should include at least a "closed period" of "light work" because the ALJ's original order included a light work limitation rather than a medium work limitation. ECF No. 20 at 30. This argument is unavailing for the same reasons discussed above; the ALJ's second order is consistent with the instructions on remand, and the ALJ is not otherwise obligated to make findings consistent with his prior order.

9

Nonetheless, plaintiff is correct that the ALJ improperly evaluated his postural activities limitations because he failed to address (or selectively addressed) the functional limitations included in the notes of treating physicians Dr. Richard Cross and Dr. Shahid Ali.[5] With respect to Dr. Cross, the ALJ failed to assign any particular weight to the opinion and selectively cited Dr. Cross's findings that plaintiff's "knee is stable" and, as of Dr. Cross's 2013 evaluation, "currently not causing mechanical problems." AR 25, 814. The ALJ fails to acknowledge that Dr. Cross stated in the same exam notes that plaintiff "has difficulty doing squats and kneeling" and "is still having limitations when it comes to manual type labor activities." Id. It is true that the ALJ may afford different weights to different portions of an opinion, Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989), however, it is also true that an ALJ may not cherry pick portions of a physician's opinion to support his conclusion while ignoring contradictory, probative information in the same opinion. Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014).

With respect to Dr. Ali, the ALJ specifically assigned "significant weight" to his "physical and mental determinations." AR 32. The ALJ noted that Dr. Ali's internal medicine CE indicated that plaintiff "retained the ability to work and had no workplace environmental or manipulative limitations." AR 29, citing AR 562-567. In this same opinion, however, Dr. Ali limited plaintiff to "occasionally for climbing, balancing, stooping, kneeling, crouching and crawling[,]" noting that "[t]his [limitation] is because of crepitus." AR 567. This omission, especially in light of the fact that the ALJ's gave significant weight to Dr. Ali's opinion and the fact that such limitations were included in the ALJ's initial opinion, raises concerns regarding the ALJ's ultimate treatment of plaintiff's postural limitations.

---

[5] Plaintiff also asserts that the ALJ should have included postural limitations identified by "all medical sources," including opinions by consultative examiner Dr. Joseph Garfinkel. ECF No. 20 at 22-23. The ALJ expressly assigned little weight to Dr. Garfinkel's assessment, finding it inconsistent with the CE medical opinions of Dr. Ali and Dr. Vesali, and inconsistent with State Agency ("SA") determinations. AR 32. Finding Dr. Garfinkel's opinion was sufficiently addressed and properly discredited by the ALJ, it is not addressed here but is further discussed later in this order.

The ALJ's failure to assign weight and/or to provide full and fair consideration of Dr. Cross's and Dr. Ali's opinions with respect to plaintiff's functional limitations warrants remand, as discussed below.

## C. The ALJ Properly Weighed Psychiatric Medical Opinion Testimony on Remand

Plaintiff challenges the ALJ's assessment of treating physicians Dr. Nitin Bagul (along with colleagues ARNP Barbara McGlynn and LCSW Ernesto Cervantes) and Dr. Sid Cormier. Upon review, the court finds these opinions were adequately addressed. "Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle v. Comm'r, 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted). "The general rule is that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). However, when the ALJ resolves conflicts by rejecting the opinion of an examining physician in favor of the conflicting opinion of another physician (including another examining physician), he must give "specific and legitimate reasons" for doing so. Regennitter v. Comm'r, 166 F.3d 1294, 1298-99 (9th Cir. 1999) ("Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.").

The ALJ gave specific and legitimate reasons for accepting only certain portions of the opinion of Dr. Cormier. The ALJ afforded significant weight to the doctor's mild and moderate mental limitations and only disregarded the doctor's opinion regarding Plaintiff's serious mental limitations (AR 31-32). See Magallanes, 881 F.2d at 753. As discussed above, Dr. Cormier's moderate limitations were sufficiently addressed by the ALJ's limitation of plaintiff to simple or unskilled work. With respect to the rejected severe limitations, the ALJ noted not only that Dr. Cormier's findings did not comport with the State Agency ("SA") determinations, but also that

11

treating psychiatric examinations did not bear out Dr. Cormier's findings. AR 30, 32 586, 595, 601, 753, 877, 1166-67) (see also AR 485-87 (SA medical consultant finding by Dr. Kaspar finding plaintiff capable of understanding and performing simple tasks with limited supervisor contact)).

The ALJ also gave proper consideration to the findings of Dr. Bagul and his colleagues, Ms. McGlynn and Mr. Cervantes. ECF No. 23 at 16, citing AR 31-32. Dr. Bagul and his colleges wrote their notes while employed at Shasta Community Health Center, referred to in the ALJ's order as "SCHC." See AR 580. Although the ALJ does not specifically address Dr. Bagul, he does provide a clear and specific evaluation of the notes from SCHC, writing that "records from SCHC documented [plaintiff] was mentally treated during the period April 2011 to December 6, 2013 and the last MSE was normal." AR 27-28. The ALJ recounted the documentation of plaintiff's improvement through his treatment at SCHC, finding that toward the end of his treatment he was experiencing "normal mood/affect" and was "attending college classes focused on heavy equipment." Id., AR 580, 590, 592, 606, 608, 867 (SCHC note from Mr. Cervantes on December 6, 2013 documenting that plaintiff "continues to follow up with individual supportive therapy" and maintains "a full-time status at college" where he "is doing well with his academics."). Although he collectively referred to Dr. Bagul, Ms. McGlynn, and Mr. Cervantes as "SCHC" in his order, the ALJ sufficiently addressed their opinions and gave specific and legitimate reasons for his weight assignment.

D.  The ALJ Properly Weighed Physical Medical Evidence on Remand

Plaintiff takes issue with the ALJ's treatment of medical opinions and statements made by RN Lucy Rogers, treating physician Dr. Ron Sand, Dr. Richard Cross, and Dr. Joseph Garfinkel. ECF No. 20 at 27-31. Plaintiff further argues the ALJ gave too much weight to Drs. Ali and Vesali. Id. The treatment of Dr. Cross has already been found improper, as discussed above. Upon review of the record, the court finds the ALJ properly weighed the opinions of the remaining physicians and medical professionals on remand.

With respect to RN Rogers, plaintiff cites AR 695 as containing a note limiting plaintiff to lifting 10 pounds. Upon review of this record, the court finds no such limitation (although plaintiff is advised to lose 5-10 pounds to stay within a normal weight range). Id. With respect to Dr. Sand, a provider at SCHC, plaintiff refers to a 2011 note in which Dr. Sand checked boxes

indicating plaintiff has a physical incapacity preventing or substantially reducing his ability to engage in full or part time work, and listing the supporting diagnoses as "degenerative cervical and lumbar spine disease, bilateral carpel tunnel syndrome, and shoulder arthritis." AR 543. The ALJ referred to numerous instances of contradictory evidence in the record that discredits Dr. Sand's brief note; he properly provided specific and legitimate reasons for not relying on it. AR 22, 29, 30; see also AR 450, 451, 670, 816, 1131.

The ALJ also properly discounted the opinion of Dr. Garfinkel. The ALJ "gave minimal weight to Dr. Garfinkel's medical opinions as they were not accepted by the SA (Exhibits C-3A-5A & 8F), and they are inconsistent with the CE medical opinions of Dr. Ali (Exhibit C-21F) and Dr. Vesali (Exhibit C-34F)." AR 31. The ALJ also found chart notes and diagnostic findings supported Dr. Vesali and Dr. Ali's medical opinions to a greater extent than Dr. Garfinkel's. Id. The ALJ also found Dr. Garfinkel's opinion out of line with plaintiff's daily activities and his conservative treatment regimen (lack of chiropractor care, absence of surgery on plaintiff's spine, use of steroid injections.). Id. These conclusions are borne out in the record. For example, the ALJ noted that in February of 2011 x-rays and MRI studies of plaintiff's spine did not show any disc herniation, protrusion, or cord impingement. AR 450, 1131. Shoulder x-rays showed no osteoarticular abnormality, and a lumbar spine MRI was negative for focal disc protrusion/ extrusion or significant canal or foraminal stenosis. AR 451, 670. A June 2013 x-ray of the lumbar spine shoed only mild lumbar disc disease. AR 970. In sum, the ALJ properly supported his findings regarding the challenged physician opinions with legitimate and specific evidence.

E. The ALJ Properly Discounted Plaintiff's Subjective Testimony

The ALJ did not err in his treatment of plaintiff's subjective testimony. Evaluating the credibility of a plaintiff's subjective testimony is a two-step process. First, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . . In this analysis, the claimant is not required to show that [his or her] impairment could reasonably be expected to cause the severity of the symptom she has alleged; [he or she] need only show that it could reasonably have caused some degree of the symptom." Garrison v.

13

Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical evidence of the pain or fatigue itself is not required. Id. (internal citations omitted). Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so." Id. (internal citations omitted). While an ALJ's credibility finding must be properly supported and sufficiently specific to assure a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). So long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing." Thomas, 278 F.3d at 958.

Here, the ALJ discredited plaintiff's "mental complaints" by describing how they are inconsistent with the treatment record and contradicted by the SA. AR 27. He referred to the records of SCHC, discussed above, to discredit plaintiff's statements. Id. He also referred to various chart notes and plaintiff's actives of daily living as described in his Function Reports. AR 27-28. Plaintiff's primary complaint with respect to the ALJ's treatment of his testimony is that the ALJ made his analysis on a "class" of plaintiff's testimony ("mental health complaints") rather than discrediting specific portions of plaintiff's testimony. ECF No. 20 at 31. Plaintiff cites no case law to support the assertion that the ALJ must discredit plaintiff's testimony sentence by sentence, and the court finds none. Id. The ALJ's treatment of plaintiff's subjective testimony is supported in his order by clear, specific, and convincing evidence in the record.

C. Remand for Benefits or for Further Proceedings

As discussed above, the ALJ erred addressing the postural limitations described by Dr. Cross and Dr. Ali. That error was not harmless; properly accounting for these postural limitations could result in a finding of non-disability.

Accordingly, the court is authorized "to 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" Treichler v. Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should

////

remand for an immediate award of benefits." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

Here, further factual development is needed to determine to what extent Dr. Cormier and Dr. Ali's medical opinions should impact plaintiff's RFC, and what the impact of any changes to plaintiff's RFC would be on the determination of disability. For these reasons, the matter is reversed and remanded to the Commissioner for further factual development.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 20), is GRANTED on the grounds specified above;

2. The Commissioner's cross-motion for summary judgment (ECF No. 23), is DENIED;

3. The matter is REMANDED to the Commissioner for further proceedings; and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: March 2, 2018

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE